IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 07-cv-02459-RPM

CONSTANCE VAN EATON,

Plaintiff,

vs.

LEE HECHT HARRISON, LLC. EMPLOYEE WELFARE PLAN;
ADECCO GROUP NORTH AMERICA; and
METROPOLITAN LIFE INSURANCE COMPANY d/b/a METLIFE,

Defendants.

_____

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
_____

The plaintiff Constance Van Eaton ("Van Eaton") filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for a declaration of rights and long term disability benefits under the Lee Hecht Harrison, LLC. Employee Welfare Plan ("Plan") against the Plan and Metropolitan Life Insurance Company ("MetLife") as claims administrator, for breaches of fiduciary duty against MetLife, and for civil penalties against Adecco Group North America ("Adecco") as plan administrator. Van Eaton moves for summary judgment in her favor on all claims, seeking a determination that the administrative record be closed as of the date of the filing of this lawsuit, that she is entitled to long term disability benefits which include not only her base salary but also compensation received from her former employer Lee Hecht Harrison, LLC ("Lee Hecht") in the form of "incentive bonuses," and that

civil penalties of $110 per day be assessed against Adecco. This lawsuit was filed November 26, 2007. Federal question jurisdiction exists.

The administrative record filed by the defendants shows the following.

In 2000, while employed by Lee Hecht, Van Eaton was in a motor vehicle accident and suffered a head injury. (Rec. 1160) She continued working for Lee Hecht until April 2005. (Rec. 1160) At all relevant times, she was vice president of business development for Lee Hecht. (Rec. 1160) She applied for long term disability benefits under the Plan. (*See, e.g.,* Rec. 1147) In August 2005, Lee Hecht completed a "Long Term Disability Claim Form Employer Statement," which provided Van Eaton's "Earn. on Last Day Worked" was $70,000 per year, her "Basic Earnings (exclusive of overtime, bonus, etc.)" was $5,833.33, and a Benefit Rate of 60%. (Rec. 1162) That form was provided by MetLife, as claims administrator. (*See* Rec. 1162-1164)

Van Eaton's claim for long term disability benefits was approved by MetLife on December 21, 2006. (Rec. 491-492) MetLife determined Van Eaton's benefits based on 60% of her basic monthly salary of $5,833.33, resulting in a gross benefit of $3,500 per month. (Rec. 491-492) MetLife made this determination based on the terms of a Plan document with an effective date of January 1, 2002 (the "2002 plan"). (Rec. 246-307)

Under the 2002 plan, long term disability benefits consist of a monthly benefit of "60% of the first $20,833 of your Predisability Earnings, reduced by Other Income Benefits," with a maximum monthly benefit of $12,500. (Rec. 262) "Predisability Earnings" is defined as "the amount of your gross salary or wages from your Employer as of the day before your Disability began. This is calculated on a monthly basis." (Rec. 270) Predisability Earnings do not include

2

"awards, commissions, and/or bonuses." (Rec. 271) Plan fiduciaries are given discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits. (Rec. 304) The terms allow MetLife 45 days to respond to an appeal of a determination, unless "special circumstances" warrant an additional 45 days to respond. (Rec. 303)

By email on December 27, 2006, Van Eaton, through counsel, asked how MetLife calculated Van Eaton's benefit. (Rec. 666) By email on January 3, 2007, Van Eaton's attorney advised MetLife that Van Eaton's compensation consisted of a $70,000 salary "supplemented by an incentive bonus structure that was paid out during the course of the year." She stated that Van Eaton's "last full year's salary plus bonus" was "roughly $120,000" or "on the annualized amount she was earning at the time of her disability onset in 2005, roughly $150,000." She also requested MetLife to "provide us with everything in her [Van Eaton's] file upon which you have relied in making that determination [regarding the calculation of benefits]." (Rec. 495)

MetLife responded to Van Eaton's attorney's emails in a letter dated January 3, 2007. MetLife quoted that "predisability earnings" did not include "awards[,] commission and/or bonuses," and stated the benefits were based on Van Eaton's gross salary which her employer provided as $70,000 per year. MetLife asked that "[s]hould the plan wording you reviewed differ from that noted above, please provide a copy." (Rec. 646-647)

Van Eaton's attorney responded by email on January 10, 2007. She stated that MetLife was looking at an incorrect plan document, attached a scanned copy of a plan with an effective date of October 1, 1996 (the "1996 plan"), and stated Van Eaton has not provided any evidence

3

concerning her earnings for the 12 months prior to her disability onset date because she has not been asked to, but was more than willing to do so. (Rec. 499, 510-528) The 1996 plan terms provided a "monthly benefit" consisting of 60% of "basic monthly earnings" and defined "basic monthly earnings" as "excluding commissions, overtime and other extra pay" but including "bonuses." (Rec. 514, 517) The 1996 plan terms also granted plan fiduciaries discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits. (Rec. 527)

MetLife maintained an internal "Diary Review - Report" concerning Van Eaton's claim. Entries dated January 18 and 22, 2007 show MetLife attempting to determine whether another plan existed and whether the correct plan was used in administering the claim. (Rec. 46-47) Another January 22, 2007 diary entry stated that an email was sent to Van Eaton's attorney, advising that MetLife was looking into the discrepancy between the wording in the plans. (Rec. 46-47)

On January 30, 2007, by email, Van Eaton's attorney stated that MetLife was relying on an incorrect or inapplicable document, stated Van Eaton's benefit was undercalculated, and requested a response as to MetLife's position. (Rec. 176, 50) MetLife responded that same day, advising it had requested a copy of the plan that was in effect as of the date of Van Eaton's disability to make sure it was looking at the right plan, and a copy would be forwarded along with MetLife's response regarding wages as soon as the plan was received. (Rec. 348, 50)

On February 2, 2007, MetLife forwarded a copy of the 2002 plan and stated that was the applicable plan. (Rec. 245-307, 51)

4

By email on February 5, 2007, Van Eaton's attorney acknowledged the differences between the plans and asked for documentation that the plaintiff was provided with the 2002 plan version along with "summaries or notices of material modifications that alerted plan participants, including Ms. Van Eaton," to the changes. (Rec. 173, 51)

A February 8, 2007, MetLife diary entry reflected a call to Van Eaton's attorney, advising her that the employer is responsible for notifying the employee of any changes to the plan. (Rec. 51)

On April 18, 2007, Van Eaton's attorney wrote to Lee Hecht, as plan administrator, and advised of the differences between the 1996 and 2002 plan documents, advised of her dealings with MetLife, and requested copies of the following under ERISA § 104:

> a) the Summary Plan Description and/or any document under which the Plan was established or operated as effective in July, 2005;
>
> b) copies of any Notices of Material Modification that were provided to participants at any time between 1996 and 2005 that would have alerted them that the definition of Predisability Earnings had been modified to exclude bonuses or incentive payments; and
>
> c) any documentation that would establish that either an updated Summary Plan Description with the exclusion of bonuses and/or incentive payments from the definition of Predisability Earnings, or Notice of Material Modification to the same effect was provided to Ms. Van Eaton.

MetLife was copied on the letter. (Rec. 537-538)

On May 8, 2007, less than 30 days from the date of Van Eaton's request under § 104, Adecco, as plan administrator, responded. Adecco forwarded a copy of what it called the "Lee Hecht Harrison's Long Term Disability Summary Plan Description" (the 2002 plan) and stated it

was "researching [her] request for information in response to (b) and (c)" and would contact her once Adecco obtained more information. (Rec. 460) Although not in the record, it is undisputed that Adecco acquired Lee Hecht after 2005 and succeeded Lee Hecht as the plan administrator of the Plan. (Second Amended Complaint, ¶18; Answer, ¶18.)

On May 21, 2007, Van Eaton's counsel replied to Adecco, and stated that Van Eaton did not believe she had ever received what had been sent, no documentation has been received showing that plan document had ever been supplied to her, more than 30 days have passed so Adecco's response was overdue, and Van Eaton intended to appeal the December 21, 2006 determination of benefits. MetLife was copied on the letter. (Rec. 461-462)

In a letter dated June 6, 2007, Van Eaton wrote to her attorney, at her attorney's request. In that letter, she stated: she was "paid a base salary of $70,000 plus an incentive bonus each month based on the previous month's paid invoices after I generated my required based quota. I was explicitly informed that this was a bonus, and not a commission." The plaintiff also attached a copy of what she called a "2005 Lee Hecht Harrison Summary Document" ("LHH 2005 Document") which she had downloaded and stored on her computer prior to her last day of work in April 2005. (Rec. 463-488) That document provided a "summary of colleague benefits" and stated, in relevant part, "Salary Definition for LTD *only* - Your annual base salary plus bonus, excluding overtime and commissions." (Italics in original.) (Rec. 464, 476)

On June 7, 2007, Van Eaton appealed MetLife's December 21, 2006 determination of benefits and argued the LHH 2005 Document which included bonuses applied. Van Eaton's counsel stated they have been attempting to confirm Van Eaton's "incentive bonus pay

structure" and requested MetLife to hold the record open until July 20, 2007 to allow Van Eaton time to obtain this information. Van Eaton's attorney provided MetLife a copy of the LHH 2005 Document. (Rec. 392-394)

A series of MetLife diary entries from June 14 to July 2, 2007 show that MetLife was aware there was an issue regarding Van Eaton's "base benefit," believed the issue had been resolved, believed it had provided Van Eaton's attorney with a correct copy of the plan (the 2002 plan), believed that Van Eaton had provided an incorrect copy of the plan to her counsel, and was aware that Van Eaton's attorney was taking the base benefit issue up with the employer. (Rec. 67)

On September 18, 2007, Van Eaton's counsel wrote MetLife and inquired about the status of the appeal concerning the computation of benefits and when they could expect a decision. Adecco was copied on that letter. (Rec. 387)

By letter dated September 27, 2007, MetLife responded that it was investigating the matter and would contact Van Eaton's counsel when MetLife's investigation was complete. (Rec. 386) A MetLife diary entry with that same date shows MetLife was still relying on the 2002 plan: "per plan that ML has on file - pde [predisability earnings] does not include commissions or bonuses." (Rec. 69)

On October 9, 2007, Van Eaton's counsel wrote again, asserting that MetLife's response to Van Eaton's appeal was already late, that either the LHH 2005 Document was the operative document and MetLife improperly failed to include Van Eaton's bonuses in the calculation of her

7

benefits or MetLife had some evidence that the LHH 2005 Document was not the operative document. Adecco was copied on that letter. (Rec. 380-381)

On October 11, 2007, more than four months after MetLife received the LHH 2005 Document from Van Eaton, MetLife forwarded a copy of that document to Adecco. (Rec. 382)

An October 16, 2007, MetLife diary entry recognized an issue regarding MetLife's response time to Van Eaton's appeal was outstanding. (Rec. 69)

On November 7, 2007, MetLife wrote Van Eaton's counsel that it was still looking into the matter and had contacted Van Eaton's employer. (Rec. 379)

On November 9, 2007, Van Eaton's counsel sent a copy of a draft complaint that would be filed November 26 if Van Eaton's claim was not resolved by that date. Adecco was copied on the letter. (Rec. 362-369)

When no further response was received by Van Eaton, she filed suit on November 26, 2007. As of the date this lawsuit was filed, MetLife was still operating under and its denial was based on the 2002 plan.

On February 29, 2008, all defendants admitted, in their amended answer to the first amended complaint, that the definition of salary applicable to the calculation of Van Eaton's monthly long term disability benefit includes her base salary plus bonus but excluded overtime and commissions, as set forth in the LHH 2005 Document.

Additional information in the record submitted by MetLife reflects activity after this lawsuit was filed, and upon which MetLife relied in rendering an adverse decision on Van Eaton's appeal.

The parties dispute the standard of review to be applied and evidence to be considered in evaluating Van Eaton's claims. The defendants argue an arbitrary and capricious standard should be applied because the 1996 and 2002 plan documents give the claims administrator discretionary authority to construe the terms of and determine eligibility for benefits under the plan. Under *Kellogg v. Metropolitan Life Ins. Co.,* 549 F.3d 818, 2008 WL 5095965 (10th Cir. 2008), even assuming the continuing validity of the "substantial compliance" rule for plan administrators with discretionary authority, "[i]f a plan administrator is not in substantial compliance with the [ERISA] deadline," a de novo standard of review applies. *Id.* at *9.

Under ERISA's implementing regulations, the plan administrator must notify a claimant of its determination of an appeal no later than 45 days after receipt of the claimant's request for a review, unless special circumstances require an extension of time of up to an additional 45 days. Written notice of any extension must be given to the claimant prior to the termination of the initial 45 day period. 29 C.F.R. § 2560-1(i)(3).

In this case, Van Eaton appealed MetLife's initial decision on June 7, 2007, but requested MetLife to hold the record open until July 20, 2007. Assuming this request extended the time in which MetLife was required to make a determination, MetLife's initial 45 day period for determining Van Eaton's appeal ran by September 4, 2007. It was not until September 27, 2007, that MetLife advised Van Eaton it was investigating the matter, and this was provided only after Van Eaton's counsel inquired about the status of the appeal on September 18, 2007. Even assuming an additional 45 days was permissible, MetLife's response time expired by October 19,

9

2007. No determination was made by the date this lawsuit was filed, November 26, 2007. Under the facts and circumstances of this case, de novo review applies.

The Tenth Circuit has stated that the "best way for a district court to implement ERISA's purposes . . . is ordinarily to restrict de novo review to the administrative record compiled during the claim administration process, instead of taking new evidence, hearing witnesses, and the like." *Jewell v. Life Ins. Co. of North Amer.,* 508 F.3d 1303, 1308 (10th Cir. 2007) (internal quotation marks omitted). Supplemental evidence may be admitted in a de novo standard of review case in "the unusual case" and under "exceptional circumstances" if certain factors are met. This is not such a case and review is limited to the administrative record as it existed pre-suit, i.e., before November 26, 2007. This determination renders Van Eaton's third claim against MetLife moot.

The defendants argue that under either standard of review, MetLife's calculation of Van Eaton's monthly disability benefit should be upheld. Under either standard, MetLife's determination must be overturned.

MetLife's initial determination of benefits made on December 21, 2006 relied on the 2002 plan which excluded bonuses and, therefore, the incentive bonuses which Van Eaton stated she received. MetLife was thereafter advised of the 1996 plan which Van Eaton was relying on and provided to MetLife.

When MetLife received Van Eaton's June 7, 2007 appeal of MetLife's December 21, 2006 determination, it was provided with another set of terms as set forth in the LHH 2005

Document. MetLife was advised that Van Eaton had no recollection of ever seeing or receiving the 2002 plan.

MetLife was faced with three possible "plan" terms to calculate Van Eaton's benefits - - the 1996 plan which included bonuses but excluded commissions, the 2002 plan which excluded bonuses and commissions, and the LHH 2005 Document which, like the 1996 plan, included bonuses but excluded commissions. Under such facts and circumstances, the LHH 2005 Document's terms apply and Van Eaton's monthly long term benefit calculation included predisability bonuses. *See Semtner v. Group Health Serv. of Oklahoma, Inc.,* 129 F.3d 1390, 1393 (10th Cir. 1997) ("[w]hen the summary plan description and the plan language differ, the summary plan description is binding").

The only evidence in the record shows Van Eaton's compensation included bonuses - - a base annual salary of $70,000 combined with incentive bonuses which totaled approximately $120,000 or $150,000, depending on how the amount was calculated. Van Eaton concedes MetLife has the discretion to determine how to calculate the amount of bonuses to be included.

Nonetheless, despite the conflicting terms and Van Eaton's position, MetLife continued to rely on the 2002 plan, did not request evidence from Van Eaton about her incentive bonuses even though she had offered to provide this information back in January 2007, sought no documentation from Adecco regarding the nature of her compensation to supplement that provided by Lee Hecht in August 2005, and sought no clarification or confirmation from Adecco as to the LHH 2005 Document until October 11, 2007, and only after Van Eaton's counsel inquired again about the appeal on October 9, 2007. MetLife's calculation of Van Eaton's

11

monthly benefits excluding her incentive bonuses was unreasonable, and its decision was arbitrary and capricious.

Adecco's conduct fares no better. On April 18, 2007, Van Eaton, through counsel, requested copies of the summary plan description and any document under which the Plan was established or operated as effective in July 2005. This request was made pursuant to ERISA § 104, which provides, in relevant part:

> (4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary . . . plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or *other instruments under which the plan is established or operated*. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

29 U.S.C. § 1024(b)(4) (italics added). The failure to comply, within 30 days, with such written requests subjects the plan administrator to potential liability in the amount of up to $110 per day from the day of such failure. 29 U.S.C. § 1132(c)(1) & 29 C.F.R. § 2575.502c-3. This determination is within this court's discretion. 29 U.S.C. § 1132(c)(1). The presence or absence of prejudice, injury, and bad faith are factors which may be considered. *Moothart v. Bell,* 21 F.3d 1499, 1506 (10th Cir. 1994).

Van Eaton seeks penalties of $110 per day from the date of her request, April 18, 2007, until February 29, 2008, the date in which Adecco, through its amended answer to the first amended complaint, impliedly conceded that the LHH 2005 Document provided plan terms. Adecco timely provided Van Eaton a copy of the 2002 plan but never provided the LHH 2005

Document. Adecco contends it did not need to do so because sufficient detail is required before papers can qualify as a plan document or a summary plan description. The statute is not so limited.

The LHH 2005 Document includes information concerning Van Eaton's entitlement to benefits under the Plan, directly relevant to the issue of whether bonuses are included or excluded in determining her predisability earnings. It qualifies as "other instruments under which the plan is established or operated." Adecco's failure to produce this document prejudiced and injured Van Eaton. It is therefore

ORDERED that plaintiff Constance Van Eaton's first claim for relief against defendants Metropolitan Life Insurance Company d/b/a MetLife and Lee Hecht Harrison LLC. Employee Welfare Plan is hereby granted. The plaintiff's entitlement to long term disability benefits under the Lee Hecht Harrison, LLC. Employee Welfare Plan shall be calculated based on the plaintiff's predisability base salary of $70,000 and incentive bonuses. Defendant MetLife shall determine how the incentive bonuses shall be calculated. The defendant Adecco Group North America shall provide the necessary information and documentation for such calculation of benefits to defendant MetLife and the plaintiff; and it is

FURTHER ORDERED that the plaintiff's second claim for relief against defendant Adecco is hereby granted. The plaintiff is awarded penalties in the amount of $110 per day from April 18, 2007 until February 29, 2008, 317 days, for a total of $34,870.00; and it is

FURTHER ORDERED that the plaintiff's third claim for relief against defendant MetLife is moot.

DATED: January 13, 2009

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge